Anna C. Tillapaugh v. Commissioner.
Tillapaugh v. Commissioner
Docket No. 510-70 SC.
United States Tax Court
T.C. Memo 1972-5; 1972 Tax Ct. Memo LEXIS 249; 31 T.C.M. (CCH) 10; T.C.M. (RIA) 72005; January 10, 1972, Filed John E. Casey, for the petitioner. Stephen M. Miller, for the respondent. INGOLIA
Memorandum Findings of Fact and *250 Opinion INGOLIA, Commissioner: Respondent determined a deficiency in petitioner's Federal income tax for 1966 in the amount of $431.66 and an addition to the tax of $25.32. The issues for decision are (1) whether the petitioner is entitled to claim a loss from 11 the operation of a funeral home on her 1966 individual income tax return under section 165, [1] and, (2) whether the petitioner is liable for an addition to the tax for late filing of her return under section 6651(a). Findings of Fact The petitioner, Anna C. Tillapaugh, was a legal resident of Schenevus, New York, at the time her petition was filed. She filed her Federal income tax return with the District Director of Internal Revenue at Buffalo, New York, on May 2, 1967. Petitioner was born on December 8, 1873, and married Revo Tillapaugh on February 26, 1908. Their son, George, was born on July 28, 1913. In 1919 Revo acquired a funeral business in Cooperstown, New York, which is about 8 miles from Schenevas, New York. In 1929 Revo purchased a home in Cooperstown and began operating *251 a funeral home from it with his brother. Anna was an undertaker and also helped in the business. By 1935 Revo, Anna, and George were all undertakers licensed by the state of New York and in 1939 George purchased the Cooperstown business from his father and his uncle. Revo retained ownership of the real estate until 1951 when he gave it to George and his wife, Marjorie. In the early 1920s, Revo began conducting funerals in Milford, which is 9 miles from Cooperstown. In 1935 he individually purchased a home in Milford, which he converted into a funeral home and from which he conducted a funeral business. Anna continued to help in the business. In December of 1956, Revo gave the Milford realty to George and his wife, Marjorie. In February of 1958, Revo died and in March of the same year Anna executed a general power of attorney in which she appointed George to handle all of her financial affairs. Since 1935 the funeral homes in Cooperstown and Milford have been operated under the name of Tillapaugh Funeral Service. The business stationery reflects this fact. The Tillapaugh Funeral Service maintained a checking account at the National Commercial Bank and Trust Co., in Cooperstown. *252 George and his wife, Marjorie, were the signatories on the account. Prior to Revo's death, he and George filed partnership returns for the Tillapaugh Funeral Service listing the income from the Cooperstown and Milford funeral homes. After Revo's death, George filed partnership returns with his mother and his wife, Marjorie. They filed partnership returns in 1963, 1964, and 1965. On each Anna received a distribution of $450 and George and Marjorie shared the remainder equally. In 1966 partnership returns were not filed after Anna and George were advised by an employee of the Internal Revenue Service that they should not be used. Anna filed an individual tax return in 1966 claiming a loss from the operation of the Milford funeral home which she offset against other income she had realized in that year. In 1966 and prior thereto, section 3428 of the Public Health Law of the state of New York was as follows: Funeral Directoring, Registering of Licenses, Fees (a) Every person who, within the state, practices as a funeral director, undertaker, or emblamer, and every person, partnership or corporation who or which owns or maintains within the state a funeral establishment as herein *253 defined, shall biennially apply to the department for an appropriate certificate of registration and report, in a statement subscribed and affirmed as true under the penalties of perjury, any facts requested by the department. Section 3341 of the Public Health Law states: Funeral Establishment Operations by Licensed Persons: No funeral establishment shall be operated within the state unless it shall be under the immediate and personal supervision, direction, management and control of a licensed funeral director, undertaker registered with the department who shall not serve as the manager of more than one funeral establishment. Anna was listed as "manager" of the Tillapaugh Funeral Service, Main Street, Milford, New York, on licenses dated January 1, 1963, January 1, 1967, and January 1, 1969. During the year 1966, nine funerals were conducted from the Milford Funeral Home. Three were welfare cases, and of the remaining six only four were paid for. Anna, who was then 92 years of age, made some arrangements for the funerals. However, there were no facilities in the Milford establishment for embalming or the preparation of bodies, and the caskets were kept at the Cooperstown home. *254 In addition, all of the books were kept by Marjorie. She kept 12 the individual funeral records, typed the bills, and received and deposited the checks. Also, the hearses and other business vehicles used at Milford were owned by Marjorie and were kept at Cooperstown. Opinion Issue 1. Loss Deduction Section 165(c)(1) [2] allows a taxpayer to deduct business losses incurred in the operation of a trade or business. Such deductions do not turn upon general equitable considerations but depend upon legislative grace. They are to be strictly and narrowly construed. (C.A. 8, 1961), affirming ; Deputy v. du . Also, it is well established that the burden of proving losses is upon the taxpayer. . *255 In this case, the petitioner must show that she actually owned and operated the business at Milford before she can deduct the losses resulting from its operation. Unfortunately, we do not believe she has done so. While we are convinced that Anna worked at the funeral parlor in Milford, we are equally convinced that she did not "incur" the losses claimed in 1966 within the meaning of section 165. The fact that for 30 years the Cooperstown and Milford homes were operated under the name of the Tillapaugh Funeral Service; that the business was originally owned by George's father, Revo; that George became active in the business; that he was given the business property by Revo when his mother was 82 years of age; that he filed partnership returns for the business in years preceding 1966 where he and Marjorie received amounts substantially in excess of the $450 given Anna - all of these facts militate against the idea that Anna individually owned the Milford establishment. Further, when we look specifically at what transpired in 1966, it is even clearer to us that Anna did not own and operate the business. Milford had practically no working facilities. George prepared the bodies and made *256 removals. The caskets were located at the Cooperstown location. Marjorie kept the books, sending out the bills and depositing the receipts. To be sure, there is some evidence relating to the licensing requirements of the state of New York indicating that each funeral business must have a different manager. Also, the record indicates that Anna did perform some services. However, the evidence presented falls far short of sustaining the petitioner's burden of proof and we therefore hold she cannot deduct the losses claimed on her 1966 income tax return. Issue 2. Addition to the Tax As to the addition to the tax, the only evidence presented having even a remote connection to the late filing of the return is the assertion that an employee of the Internal Revenue Service advised the petitioner to file an individual rather than a partnership return. Even accepting this fact, it would not establish that the late filing was due to reasonable cause and not due to willful neglect and therefore the addition to the tax was properly asserted within the ambit of section 6651(a). [3]
*257 Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered for the respondent. 13 Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise noted.↩
2. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. (b) Amount of Deduction. - For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; * * *↩
3. SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax. - In case of failure - (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; (2) to pay the amount shown as tax on any return specified in paragraph (1) on or before the date prescribed for payment of such tax (determined with regard to any extension of time for payment), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount shown as tax on such return 0.5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; or (3) to pay any amount in respect of any tax required to be shown on a return specified in paragraph (1) which is not so shown (including an assessment made pursuant to section 6213(b)) within 10 days of the date of the notice and demand therefor, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount of tax stated in such notice and demand 0.5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.↩